IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIC LAVELLE WAGNER, JR.,

       Plaintiff,

    v.

TROOPER RANDY WILLIAMS,
BOROUGH OF JEFFERSON HILLS,
JASON MOLDOVAN, TERRY MURPHY,

       Defendants.

2:25-CV-01630-CCW

## **OPINION**

Before the Court are Motions to Dismiss by Defendants Borough of Jefferson Hills, Officer Jason Moldovan,[1] and Officer Terry Murphy (collectively, "Jefferson Hills Defendants"), ECF No. 51, and by Defendant Trooper Randy Williams,[2] ECF No. 63. For the reasons set forth below, the Court will grant the Jefferson Hills Defendants' Motion and will grant in part and deny in part Trooper Randy Williams' Motion.

## I.     Background

This case stems from an altercation between pro se Plaintiff Eric L. Wagner, Jr. and police offers including Trooper Randy Williams, Officer Jason Moldovan, and Officer Terry Murphy on July 19, 2025. *See* ECF No. 24. Defendant Trooper Randy Williams is employed by the Pennsylvania State Police. *Id.* ¶ 10. Defendants Officer Jason Moldovan and Officer Terry

---

[1] In his briefing, Mr. Wagner at times refers to this Defendant as "Jacob Moldovan." *See* ECF No. 53. However, Officer Moldovan was named in the Amended Complaint as "Jason Moldovan," and a notice of appearance filed by his counsel identifies him as "Jason Moldovan." ECF No. 45. Accordingly, the Court will refer to this Defendant as Jason Moldovan.

[2] This Amended Motion to Dismiss was brought by Trooper Williams and Pennsylvania State Police on June 25, 2026. That same day, Plaintiff Eric Wagner, Jr. filed a Notice of Voluntary Dismissal, voluntarily dismissing, inter alia, all claims against the Pennsylvania State Police. Accordingly, the Court dismissed the Pennsylvania State Police as a Defendant. Trooper Williams is the only remaining Defendant bringing this Motion.

Murphy are employed by the Jefferson Hills Police Department in Allegheny County, Pennsylvania. *Id.* ¶ 13.

Mr. Wagner has voluntarily withdrawn several claims,[3] and the remaining claims in the operative Amended Complaint are: § 1983 unlawful seizure and excessive force claims under the Fourth Amendment against Trooper Williams in his individual capacity and Officers Moldovan and Murphy in their individual and official capacities (Count I); § 1983 retaliation claims under the First Amendment against Trooper Williams in his individual capacity and against Officers Moldovan and Murphy in their individual and official capacities (Count III); and a § 1983 *Monell* municipal liability claim against the Borough of Jefferson Hills based on alleged policy and training failures (Count IV).[4] *Id.* at 5–7.

The following factual allegations are accepted as true. On July 19, 2025, Mr. Wagner was parked on the shoulder of Pennsylvania Route 51 in Jefferson Hills Borough in a disabled vehicle when he was approached by Trooper Williams. *Id.* ¶¶ 14, 16. Mr. Wagner informed Trooper Williams that his vehicle had broken down and that he was waiting for assistance. *Id.* ¶ 17. Trooper Williams requested to see Mr. Wagner's identification. *Id.* ¶ 18. Mr. Wagner did not comply with the request, and asked Trooper Williams why he needed to see Mr. Wagner's identification. *Id.* Trooper Williams went back to his patrol vehicle before returning to Mr. Wagner's vehicle, where Mr. Wagner remained seated and began attempting to record Trooper Williams. *Id.* ¶ 20. More officers arrived as the "verbal exchange" between Mr. Wagner and Trooper Williams continued. *Id.* Trooper Williams then grabbed Mr. Wagner's wrist. *Id.* ¶ 21.

---

[3] In the Notice of Voluntary Dismissal, Mr. Wagner also withdrew all claims against Trooper Randy Williams in his official capacity, and Counts II, V, and VI. *See* ECF No. 62. Accordingly, the Court dismissed those claims as withdrawn. ECF No. 66.

[4] The Court has jurisdiction over Mr. Wagner's § 1983 claims, which raise federal questions, under 28 U.S.C. § 1331.

Mr. Wagner objected, ordering Officer Wagner to take his hands off him. *Id.* Defendant Officer Murphy arrived on scene. *Id.* ¶ 22. Mr. Wagner's vehicle door was opened, either by Mr. Wagner or an officer, and his wrist was grabbed again.[5] *Id.* Trooper Williams took out a taser. *Id.* After "more verbal questions" from Mr. Wagner, Trooper Williams deployed the taser. *Id.* ¶¶ 22–23. Mr. Wagner "remembers his body spasms uncontrollable movements [*sic*]" before Trooper Williams deployed the taser a second time, causing Mr. Wagner to urinate on himself. *Id.* ¶ 23. Mr. Wagner alleges that Officer Murphy "failed to intervene despite observing the unlawful escalation" and that Officer Moldovan "arrived subsequently and assisted in the removal and detention." *Id.* ¶ 24. Following the altercation, Mr. Wagner was held in custody for three days. *Id.* ¶ 25. He alleges that the incident caused him "physical injuries and psychological trauma[,]" and resulted in his arrest. *Id.* ¶¶ 29, 31. Mr. Wagner was criminally charged with multiple offenses including aggravated assault, resisting arrest, and disorderly conduct. *Id.*

The Jefferson Hills Defendants now seek to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that Mr. Wagner failed to state a claim. ECF No. 51. Trooper Williams seeks to dismiss the Amended Complaint, arguing both that Mr. Wagner failed to state a claim and that dismissal is warranted under the *Younger* abstention doctrine. ECF No. 63.

## II.    Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Although a complaint need not contain detailed

---

[5] The Amended Complaint does not allege who opened Mr. Wagner's car door or who grabbed Mr. Wagner's wrist the second time. *See* ECF No. 24 ¶ 22.

factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion: First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss.").

4

### III.   Analysis

####    A.    Dismissal is Not Warranted Under the *Younger* Abstention Doctrine

Trooper Williams argues that, under *Younger v. Harris*, 401 U.S. 37 (1971), the Court should dismiss the Amended Complaint.  For the reasons set forth below, the Court will deny Trooper Williams' Motion to Dismiss the Complaint under the *Younger* abstention doctrine.

"Generally, 'a federal court's obligation to hear and decide a case is virtually unflagging.'" *PDX N., Inc. v. Comm'r N.J. DOL & Workforce Dev.,* 978 F.3d 871, 882 (3d Cir. 2020) (quoting *Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (internal quotation omitted)).  Abstention under *Younger* is a narrow exception to this general rule, and "applies when certain types of state proceedings are ongoing at the time a federal case is commenced." *Id.*  Thus, *Younger* abstention only extends to "three exceptional circumstances: (1) state criminal prosecutions;  (2) civil enforcement proceedings;  and (3) civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Smith & Wesson Brands, Inc. v. Att'y Gen. of New Jersey*, 27 F.4th 886, 891 (3d Cir. 2022) (citing *Sprint*, 571 U.S. at 78 ("We have not applied *Younger* outside these three 'exceptional' categories, and today hold, in accord with [*New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989)], that they define *Younger*'s scope.")).

If the underlying state proceedings fall into one of these categories, the court must then apply a three-factor test, first articulated by the Supreme Court in *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).  *See PDX,* 978 F.3d at 883.  Applying the *Middlesex* factors, abstention under *Younger* is appropriate where (1) "there are 'ongoing judicial proceeding[s]'";  (2) "those 'proceedings implicate important state interests'";  and (3) "there is 'an adequate opportunity in the state proceeding to raise constitutional challenges.'" *Id.* (quoting

*Middlesex*, 457 U.S. at 432). With respect to the third *Middlesex* factor, "[e]ven where exercising jurisdiction over certain federal claims would implicate issues of extreme importance to the state, abstention would still be inappropriate if the precise claims raised to the federal court could not be litigated in the relevant ongoing state proceeding." *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 411 (3d Cir. 2005) (citing *Heritage Farms, Inc. v. Solebury Twp.*, 671 F.2d 743, 746–47 (3d Cir. 1982)), *abrogated on other grounds by Sprint*, 571 U.S. at 69.

Here, after the July 19, 2025 altercation, Mr. Wagner was charged with multiple offenses including aggravated assault, resisting arrest, and disorderly conduct. *See* ECF No. 24 ¶ 31; *Commonwealth v. Wagner*, No. CP-02-CR-0006177-2025 (Pa. Ct. Com. Pl. Allegheny Cnty. Aug 26, 2025). Trooper Williams argues that the Court should dismiss this action under *Younger* because of those pending state criminal charges. ECF No. 64 at 7. This Court need not decide whether the conditions for *Younger* abstention are satisfied. Even assuming that Mr. Wagner's criminal prosecution falls within *Sprint* and satisfies the *Middlesex* factors, dismissal is not the appropriate remedy because Mr. Wagner seeks monetary damages. *See Borowski v. Kean Univ.*, 68 F.4th 844, 850 (3d Cir. 2023) ("[B]ecause [the plaintiff] sought damages, it was not permissible for the District Court to dismiss her case even if the conditions for *Younger* abstention were satisfied."); *Coulter v. Coulter*, No. CV 22-1806, 2023 WL 3075044, at *10 (W.D. Pa. Apr. 25, 2023), *aff'd*, No. 23-2222, 2024 WL 163081 (3d Cir. Jan. 16, 2024) ("'*Younger* does not apply to the money damages claims' and 'is only appropriate where the precise claims raised in federal court are available in the ongoing state proceedings[.]'") (quoting *Mikhail v. Khan*, 991 F. Supp. 2d 596, 633 (E.D. Pa. 2014)). Accordingly, the Court will deny Trooper Williams' Motion to Dismiss on *Younger* abstention grounds.

Trooper Williams also argues that Mr. Wagner's claims "could be barred" under *Heck v. Humphrey*, 512 U.S. 477 (1994).  ECF No. 64 at 8.  Under *Heck*, "[a] claim for damages bearing that relationship to a conviction or sentence that has not been [] invalidated is not cognizable under § 1983."  512 U.S. at 487.  As Trooper Williams acknowledges, *Heck* applies only in cases where the plaintiff has been convicted.  *Id.* at 9.  Here, Mr. Wagner has not been convicted in the parallel criminal proceedings.  Accordingly, *Heck* also does not act as a bar to this action.

B.      **Mr. Wagner Has Sufficiently Stated a Claim of Excessive Force Under the 4th Amendment Against Trooper Williams, But Not Against Officers Moldovan or Murphy (Count I)**

Mr. Wagner asserts excessive force claims against Trooper Williams in his individual capacity and Officer Moldovan and Officer Murphy in their individual and official capacities.  To state an excessive force claim under 42 U.S.C. § 1983, "a complainant must, among other things, allege that the force used was unreasonable."  *Rodriguez v. Trenton Police Dep't*, 828 F. App'x 851, 852 (3d Cir. 2020) (citing *Brower v. Inyo Cnty.*, 489 U.S. 593, 599 (1989)).  And "to determine whether an officer's use of force was unreasonable, a court must consider all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force."  *Id.* (cleaned up).  Thus, to evaluate an excessive force claim, the Court looks at "whether a constitutional violation has occurred using the Fourth Amendment's objective reasonableness test."  *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  In conducting this assessment, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Cty. of L.A. v. Mendez*, 581 U.S. 420, 428 (2017) (quoting *Graham*, 490 U.S. at 396);  *see also Saucier v. Katz*, 533 U.S. 194, 207 (2001) ("Excessive force claims . .

. are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred.").

The Fourth Amendment excessive force "inquiry is highly individualized and fact specific[.]" *Santini*, 795 F.3d at 417. There are several factors that the Third Circuit has said district courts may consider when evaluating the reasonableness of a particular use of force, including:

> (1) the severity of the crime at issue, (2) whether the suspect poses an imminent threat to the safety of the police or others in the vicinity, and (3) whether the suspect attempts to resist arrest or flee the scene . . . [and] [4] the possibility that the persons subject to the police action are themselves violent or dangerous, [5] the duration of the action, [6] whether the action takes place in the context of effecting an arrest, [7] the possibility that the suspect may be armed, and [8] the number of persons with whom the police officers must contend at one time.

*Id.* (citing *Graham*, 490 U.S. at 396 (factors (1) through (3)) and quoting *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997) (abrogated on other grounds) (factors (4) through (8)) (numbering added)). Finally, this "inquiry is dispositive: When an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim." *Mendez*, 581 U.S. at 428.

Here, accepting the factual allegations in the Amended Complaint as true and viewing them in the light most favorable to Mr. Wagner, the Court cannot conclude at this stage that Trooper Williams' actions were objectively reasonable. *See Rodriguez*, 828 F. App'x at 852. The Amended Complaint asserts that Mr. Wagner was in a disabled vehicle awaiting assistance when Trooper Williams first made contact with him. ECF No. 24 ¶ 14. The Amended Complaint further alleges that when Mr. Wagner attempted to record the interaction, Trooper Williams "escalated the encounter" by grabbing his wrist. *Id.* ¶¶ 20–21. Mr. Wagner alleges that Trooper Williams then deployed a taser, striking Mr. Wagner twice, including after Mr. Wagner's body was "spasm[ing]" and making "uncontrollable movements" because of the first strike. *Id.* ¶ 23.

8

Viewing these facts in the light most favorable to Mr. Wagner, the record as currently developed is unclear as to whether the force exerted by Trooper Williams was unreasonable. *See Rodriguez*, 828 F. App'x at 852. While the deployment of a taser may be a reasonable use of force, cases involving an officer's use of a taser within this Circuit "do not establish bright-line rules of law, but rather reflect the fact-sensitive nature of any determination of reasonableness of the use of a [t]aser on a person." *Geist v. Ammary*, No. 11-07532, 2012 WL 6762010, at *4 (E.D. Pa. Dec. 20, 2012). Taser deployment is "generally deemed reasonable where the use was necessary to overcome a suspect's resistance to arrest because the [p]laintiff attempted to flee, appeared to threaten officer safety, or was either armed or suspected to be armed." *Id.* The record before the Court is unclear as to whether one or more of these conditions were applicable. And the allegations made in the Amended Complaint plausibly allege that the Trooper Williams' use of force was objectively unreasonable under the Fourth Amendment in light of the totality of the circumstances. *See Armbruster v. Marguccio*, No. 05–344J, 2006 WL 3488969 (W.D. Pa. Dec. 4, 2006) (Gibson, J.) (declining to dismiss a plaintiff's excessive force claim where there was a genuine issue of fact as to whether the arrestee was resisting at the time of the use of a taser). Mr. Wagner has therefore sufficiently alleged a claim of excessive force against Trooper Williams.

The analysis changes as it applies to Officer Moldovan and Officer Murphy, whom Mr. Wagner has sued in their official as well as individual capacities. "A suit against a governmental official in his or her official capacity is treated as a suit against the governmental entity itself." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 580 (3d Cir. 2004). Thus, to the extent Mr. Wagner asserts official-capacity claims against the officers, those claims are properly understood as claims against the municipality employing them, in this case, the Borough of Jefferson Hills. Here, Mr. Wagner separately brings a *Monell* claim against the Borough of

9

Jefferson Hills (Count IV).  The Court will therefore dismiss all claims against Officers Moldovan and Murphy in their official capacities as redundant.  Because amendment of these official capacity claims would be futile in light of the parallel *Monell* claim, dismissal will be with prejudice.  *See Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) (explaining that courts need not permit a curative amendment in the civil rights context where such an amendment would be inequitable or futile).

The Court will also dismiss Mr. Wagner's excessive force claims against Officers Moldovan and Murphy in their individual capacities.  Beginning with Officer Moldovan, in the Amended Complaint, after describing the events at issue, Mr. Wagner alleges only that "Officer Moldovan arrived subsequently and assisted in the removal and detention."  ECF No. 10 ¶ 24.  The Amended Complaint fails to allege any force Officer Moldovan exercised, let alone unreasonable force.  Moreover, Mr. Wagner's assertion that Officer Moldovan arrived "subsequently[,]" *id.*, suggests that he was not present during the events allegedly constituting excessive force.  The Court will therefore dismiss Mr. Wagner's excessive force claim against Officer Moldovan for failure to state a claim, without prejudice and with leave to amend.

Turning to the excessive force claim against Officer Murphy, the Amended Complaint alleges that Officer Murphy arrived at the scene before Trooper Williams discharged the taser and "failed to intervene despite observing the unlawful escalation."  *Id.* ¶¶ 22, 24.  A finding of excessive force is a prerequisite to a finding of failure to intervene.  *See Bush v. Renegar*, No. CV 18-327, 2020 WL 5408065, at *10 n.7 (E.D. Pa. Sept. 9, 2020) ("Although legally distinct, the fate of plaintiff's failure to intervene claim is closely linked to that of the excessive force claim since, by definition, if there was no excessive force then there can be no failure to intervene.") (quoting *Lora-Pena v. Denney*, 760 F. Supp. 2d 458, 468 (D. Del. 2011) (collecting case)).  Nevertheless,

10

courts in this Circuit consider failure to intervene claims as legally distinct from claims of excessive force. *Id.* "To prevail on a failure-to-intervene claim, 'a plaintiff must show: (1) that the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was a realistic and reasonable opportunity to intervene.'" *Arrington v. Gustafson*, No. 1:22-CV-226, 2026 WL 523114, at *12 (W.D. Pa. Feb. 25, 2026) (Baxter, J.) (quoting *Balliet v. Luzerne County*, No. 22-cv-02032, 2024 WL 2275252, at *8 (M.D. Pa. May 20, 2024)). Here, even assuming *arguendo* that the force Trooper Williams used against Mr. Wagner was excessive, the Amended Complaint does not allege that Officer Murphy had a "realistic and reasonable opportunity" to intervene in the altercation. *Id.*; ECF No. 24. Having failed to allege Officer Murphy's personal use of excessive force against Mr. Wagner, and having failed to allege that Officer Murphy had an opportunity to stop the alleged excessive force at issue here, the Court concludes that Mr. Wagner has failed to state claims of excessive force and/or failure to intervene against Officer Murphy. The Court will dismiss this claim, without prejudice and with leave to amend.

      **C.     Mr. Wagner Has Sufficiently Stated a Claim of Unlawful Seizure Under the 4th Amendment Against Trooper Williams, But Not Against Officers Moldovan or Murphy (Count I)**

Mr. Wagner asserts unlawful seizure claims against Trooper Williams in his individual capacity and Officers Moldovan and Murphy in their individual and official capacities.

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. A "seizure" under the Fourth Amendment occurs "when there is a governmental termination of freedom through means intentionally applied." *Scott v. Harris*, 550 U.S. 372, 381 (2007). An individual is "seized" for Fourth Amendment purposes where that person's freedom of movement is restrained such that a reasonable person "would have believed

11

he [or she] was not free to leave.'" *United States v. Mendenhall*, 446 U.S. 544, 553–54 (1980)). "Generally, a seizure is reasonable only where it is justified by a warrant or probable cause." *Smith v. Bialik*, No. 2:19-CV-00778, 2020 WL 231390, at \*3 (W.D. Pa. Jan. 15, 2020) (Hornak, J.) (citing *Couden v. Duffy*, 446 F.3d 483, 494 (3d Cir. 2006)).  Finally, to state a § 1983 unlawful seizure claim, a plaintiff must plausibly allege that the defendant or defendants personally participated in, or was otherwise responsible for, the allegedly unlawful seizure. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010);  *Torres v. Unuigbe*, No. 23-CV-02264, 2026 WL 1893503, at \*3 (D.N.J. June 30, 2026) ("In § 1983 actions, liability requires personal involvement in the alleged constitutional violation.") (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

Here, Mr. Wagner alleges that Trooper Williams unlawfully seized him by "unlawfully detain[ing] and tas[ing] [Mr. Wagner] without probable cause or justification[,]" during what Mr. Wagner characterizes as a "motorist assist."[6]  ECF No. 24 ¶¶ 37, 45.  Accepting these allegations as true, the Court concludes that Mr. Wagner plausibly alleges that a reasonable person would have believed he was not free to leave in the circumstances alleged, and that Trooper Williams personally effectuated a seizure within the meaning of the Fourth Amendment.  *See Mendenhall*, 446 U.S. at 553–54.  Whether Trooper Williams possessed probable cause to escalate the encounter and "seize" Mr. Wagner presents a factual question improper for resolution at this stage. Accordingly, Trooper Williams' Motion is denied as to Mr. Wagner's unlawful seizure claim against him.

---

[6] The Court notes that "[a]n officer without a warrant or probable cause may, however, conduct a 'Terry stop'—a 'brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *Couden*, 446 F.3d at 494 (citing *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).  But here, Mr. Wagner asserts that Trooper Williams approached him to provide a "motorist assist[,]" rather than as an investigatory stop.  ECF No. 24 ¶ 45.

12

The analysis again differs as it applies to Officer Murphy and Officer Moldovan. Mr. Wagner alleges that Officer Murphy arrived after Trooper Williams had already initiated the encounter and physically engaged Mr. Wagner. See ECF No. 24 ¶¶ 21–22. The Amended Complaint contains no factual allegations that Officer Murphy initiated the seizure, directed it, or otherwise caused Mr. Wagner to be unlawfully detained. Rather, Mr. Wagner alleges only that Officer Murphy arrived during the encounter. *Id.* Such allegations are insufficient to plausibly establish Officer Murphy's personal involvement in the alleged unlawful seizure. Accordingly, Count I is dismissed without prejudice and with leave to amend to the extent it asserts an unlawful seizure claim against Officer Murphy.

The Court will likewise dismiss the unlawful seizure claim against Officer Moldovan. In one sentence, Mr. Wagner alleges only that Officer Moldovan arrived after the encounter escalated, and vaguely asserts that Officer Moldovan assisted in Mr. Wagner's removal and detention. *Id.* ¶ 24. Because § 1983 liability requires personal involvement in the alleged constitutional deprivation, Mr. Wagner fails to state an unlawful seizure claim against Officer Moldovan. Accordingly, the Court will dismiss the unlawful seizure claim made against Officer Moldovan in Count I without prejudice and with leave to amend.

### D. The Court Will Grant Defendants' Motions to Dismiss Mr. Wagner's First Amendment Retaliation Claims (Count III)

Mr. Wagner brings a § 1983 claim against Trooper Williams in his individual capacity and Officers Murphy and Moldovan in their individual and official capacities, asserting that they violated his First Amendment right to free speech by retaliating against him (Count III). ECF No. 24 ¶¶ 44–47. Mr. Wagner alleges that Trooper Williams and Officers Murphy and Moldovan retaliated against him for "engag[ing] in protected speech by questioning the officer's demand for identification during a motorist assist" by "escalating the encounter, using force, and pursuing

13

baseless charges." *Id.* ¶¶ 45–46. Defendants contend that Mr. Wagner fails to state a First Amendment retaliation claim because, inter alia, he fails to allege a causal link between the alleged protected activity and the retaliatory action. *See* ECF No. 52 at 7–8; ECF No. 64 at 11–12. The Court agrees and will dismiss Mr. Wagner's retaliation claims.

To state a First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected conduct, (2) the defendant "engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising her constitutional rights, and (3) a causal link existed between the protected activity and the retaliatory action." *Falcone v. Dickstein*, 92 F.4th 193, 205 (3d Cir. 2024) (cleaned up). First, Mr. Wagner fails to allege that he engaged in protected conduct as he does not clearly define what he said to Trooper Williams. *See generally* ECF No. 24 ¶ 45 ("Plaintiff engaged in protected speech by questioning the officer's demand for identification during a motorist assist."); ¶ 20 ("the verbal exchange continued."). And even assuming *arguendo* that Mr. Wagner's "questioning" constituted protected speech, Mr. Wagner has failed to allege a causal connection between his speech and the physical altercation that later ensued. *Id.* ¶¶ 44–47. Therefore, Mr. Wagner has failed to plausibly allege retaliation under the First Amendment. Accordingly, the Court will dismiss the First Amendment retaliation claims (Count III) against Trooper Williams, Officer Moldovan, and Officer Murphy, without prejudice and with leave to amend.

E.    **The Amended Complaint Fails to Sufficiently Allege *Monell* Liability (Count IV)**

In the Amended Complaint, Mr. Wagner alleges a *Monell* claim against the Borough of Jefferson Hills, arguing in a single paragraph that it "maintained a policy, custom, or practice of tolerating unconstitutional seizures and excessive force by its officers" and failed to adequately train its officers. ECF No. 24 ¶ 49. The Borough of Jefferson Hills moves to dismiss this Count,

14

contending that a single incident alleged in a complaint is insufficient to show a municipal policy, nor is it sufficient to demonstrate a failure to train, or that the failure to train caused the alleged injuries. ECF No. 52 at 6–7. The Court agrees with the Borough of Jefferson Hills and will dismiss Mr. Wagner's *Monell* claim (Count IV).

"[A] municipality can be held liable [for constitutional violations] when the 'execution of a government's policy or custom . . . inflicts the injury.'" *Bhatnagar v. Meyer*, No. 22-2848, 2023 WL 5378834, at *3 (3d Cir. Aug. 22, 2023) (citing *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978)). To sufficiently state a *Monell* claim, a plaintiff must identify "the constitutional right at issue, identify the policy or custom at issue, identify the policymaker, demonstrate deliberate indifference or evidence of knowledge and acquiescence by the policymaker[,] and demonstrate causation.'" *Long v. City of Phila.*, No. 15-00202, 2016 WL 192605, at *3 (E.D. Pa. Jan. 15, 2016) (quoting *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 342 (E.D. Pa. 2006)). *Monell* claims, therefore, are based on an underlying constitutional violation. To satisfy the pleading standard, a plaintiff must "specify what exactly that custom or policy was" that caused the constitutional violation. *Rajab v. Westmoreland Cnty.*, No. 22-774, 2023 WL 11968042, at *4 (W.D. Pa. Jan. 23, 2023) (Dodge, M.J.) (quoting *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2019)).

The Court concludes that Mr. Wagner has failed to identify such a custom or policy as his Amended Complaint only conclusorily states that the Defendants "maintained a policy" of tolerating excessive force. ECF No. 24 ¶ 49. He provides no further details identifying an unconstitutional custom or policy or how it led to his injury; instead, his Amended Complaint "contains formulaic recitations of the legal standards under *Monell* . . . and [is] predicated upon

15

sweeping legal conclusions" which are insufficient to state a claim. *Baker v. City of Pittsburgh*, No. 24-CV-461, 2025 WL 33637, at *10 (W.D. Pa. Jan. 6, 2025) (Stickman, J.).

Mr. Wagner has likewise failed to plead a *Monell* claim under a failure-to-train theory. A plaintiff asserting a failure-to-train claim must show that this failure "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact." *Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020). Such claims are "difficult" to establish. *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("A [local government's] 'culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.'") Generally, municipal liability for the failure to train requires a plaintiff to identify a "'pattern of similar constitutional violations by untrained employees'" that "puts municipal decisionmakers on notice that a new program is necessary[.]" *Johnson*, 975 F.3d at 403 (quoting *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014)). But where a plaintiff does not allege a pattern of violations, he may establish municipal liability through a single incident where "the need for more or different training [was] so obvious," *id.*, or where the risk of injury was a "highly predictable consequence" of the failure to train[.] *Thomas*, 749 F.3d at 225. Therefore, a plaintiff must show that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Wood v. Williams*, 568 F. App'x 100, 105 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir.1999)).

Here, Mr. Wagner has not alleged a pattern of constitutional violations as he does not point to other individuals who suffered similar violations due to the alleged lack of training. Mr. Wagner has also failed to state a claim under a single incident theory because he has not alleged how the

16

Borough of Jefferson Hills' failure to train caused Mr. Wagner's injuries. *See Thomas*, 749 F.3d at 222 ("[T]he identified deficiency in a [municipality]'s training program must be closely related to the ultimate injury; or in other words, the deficiency in training [must have] actually caused the constitutional violation.") (internal citations omitted); *see, e.g.*, *Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 199–200 (3d Cir. 2018) (affirming plaintiff did not state a *Monell* claim based on the failure to hire a sufficient number of nurses because she did not adequately allege that a lack of support staff or the unavailability of nurses caused her injuries).

Mr. Wagner's allegations regarding his failure-to-train claim also fail because they are too vague and conclusory. Where a complaint contains only conclusory allegations, it "fail[s] to satisfy the 'rigorous standards of culpability and causation' required for municipal liability." *Young v. City of Chester*, 764 F. App'x 262, 265 (3d Cir. 2019) (quoting *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009)). Here, Mr. Wagner merely restates the elements of a failure-to-train *Monell* claim, which is insufficient to state a claim under § 1983. *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) (Hardy, J.) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*."); *see* ECF No. 24 ¶ 49 (conclusorily stating that the "failure to train, supervise, and discipline officers constituted deliberate indifference to the rights of citizens.").

Further, the Amended Complaint did not identify a specific training that the Borough of Jefferson Hills failed to provide.[7] *Weber v. Erie Cnty.*, No. 1:19-00124, 2020 WL 5983275, at *4

---

[7] Mr. Wagner attaches documents to his brief opposing the Borough of Jefferson Hills' Motion to Dismiss that reportedly "confirm the facial plausibility" of Mr. Wagner's *Monell* claim. ECF No. 53 at 6. In analyzing a Rule 12(b) motion, this Court may only consider documents outside of the pleadings that are "'integral to or explicitly relied upon in the complaint' or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Dist. Veterans Contracting, Inc. v. Orr Indus., LLC*, No. 1:21-CV-00748, 2022 WL 16842300, at *1 (M.D. Pa. Mar. 31, 2022) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)). The Amended Complaint neither attaches nor references these

(W.D. Pa. Oct. 8, 2020) (Lanzillo, J.) ("A failure to train claim requires a plaintiff to identify specific training not provided that could reasonably be expected to prevent the injury that occurred.") (citing *Joines v. Twp. of Ridley*, 229 F. App'x 161, 163–64 (3d Cir. 2007)).  Nor do they allege facts showing that any deficiency was a "deliberate or conscious choice."  *Harper v. Cnty. of Del.*, 779 F. App'x 143, 147 (3d Cir. 2019) (affirming dismissal of failure-to-train *Monell* claim where plaintiff "alleged nothing suggesting a failure to train, let alone that the failure was a 'deliberate or conscious choice.'").

Accordingly, because Mr. Wagner's policy or custom and/or failure-to-train *Monell* claim fails, the Court will grant the Borough of Jefferson Hills' Motion to Dismiss and dismiss the *Monell* claim asserted in Count IV Amended Complaint, without prejudice and with leave to amend.

## IV.    Conclusion

For the foregoing reasons, the Jefferson Hills Defendants' Motion to Dismiss is GRANTED, and Trooper Williams' Motion to Dismiss is GRANTED IN PART and DENIED IN PART, as set forth fully in the accompanying Order.  Should Mr. Wagner seek to file an amended complaint, he must do so by **August 17, 2026**. Any amendment shall be limited to the claims the Court has dismissed without prejudice.

DATED this 3rd day of August, 2026.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

---

exhibits.  *See* ECF No. 24.  Mr. Wagner references them for the first time in his brief in opposition.  Thus, these materials are not properly before the Court on a Rule 12(b)(6) motion.

cc (via ECF email notification):

All Counsel of Record

Eric L. Wagner, Jr, Pro Se